IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| LUANN JACOBS-PETERSON, and GAYLE "PETE" PETERSON,<br><br>　　　　　　　Plaintiffs,<br>vs.<br><br>UNITED STATES OF AMERICA, and the ARMY NATIONAL GUARD OF THE UNITED STATES,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:13-CV-00209<br><br>Judge Clark Waddoups |

　　　　This matter is before the court on the defendants' Motion for Summary Judgment (Dkt. No. 47) and plaintiffs' Motion for Partial Summary Judgment. (Dkt. No. 48.) A hearing on these motions was held on September 28, 2016, at which time the court took the matter under advisement. The court has carefully considered the memoranda and other materials submitted by the parties, the arguments of counsel, and the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

　　　　On September 19, 2010 the Utah Army National Guard started a fire on the M31 Range at Army Garrison Camp Williams. The fire was the direct result of a training exercise conducted using a .50 caliber machine gun on the M31 Range. The M31 Range was never authorized for live-fire training with a .50 caliber machine gun. The fire danger level at the nearby Tickville weather station was posted as "Extreme" and a red flag warning was forecasted due to the dry weather and high winds.

1

The United States concedes that the live-fire exercises should not have occurred due to hot, dry, and windy weather conditions. The live-fire exercises started a fire. As predicted, winds arose that eventually pushed the fire past existing fire breaks and beyond the boundaries of Camp Williams, notwithstanding firefighters' efforts to control the fire. The United States stipulated that it had a duty to prevent the fire it caused from spreading beyond the border of Camp Williams and concedes that it breached that duty. (Stipulation ¶¶ 19-20, Dkt. No. 48-1; Def.'s Mot. Summ. J. 2, Dkt. No. 47.)

Herriman City issued a mandatory evacuation order for plaintiffs' neighborhood because of the fire. The fire came within 0.65 miles of the plaintiffs' home, causing an undisputed $3,662.70 in property damage from smoke and cinders. The United States does not dispute that it is required to compensate plaintiffs for this damage. (Def.'s Mot. Summ. J. § 3, Dkt. No. 47.)

During the mandatory evacuation, while attempting to load her horse into her neighbor's horse trailer, plaintiff Lu Ann Jacobs-Peterson[1] suffered injuries to her hand, shoulder, and knee. She claims that after she led the horse into the trailer and began attempting to fasten the lead rope to the tie-ring therein, the wind changed direction, blowing smoke into the trailer and causing the horse to step back. Simultaneously, the loop that Ms. Jacobs-Peterson had formed in the rope cinched around her hand and partially amputated the top of her middle finger and injured other fingers that were in the loop. A few seconds after Ms. Jacobs-Peterson's fingers were caught, she stepped back and grabbed the horse's halter. She claims that she injured her shoulder and knee from the twisting she experienced while continuing to hold on to the horse's halter during and after her fingers became caught in the loop.

---

[1] Gayle "Pete" Peterson is also named as a plaintiff, but as discussed below the plaintiffs have elected not to pursue the claims in which he alleges damages. The court, therefore, refers only to Ms. Jacobs-Peterson as the plaintiff in this decision.

Ms. Jacobs-Peterson, who is a nurse-practitioner, claims that in addition to suffering physical injuries, she suffered financial damages from being unable to operate the new health clinic that she had opened in Tooele, Utah. She alleges that all of these damages were caused by defendants' negligence in starting the fire.

Plaintiff asserts three causes of action that are at issue in this decision: (1) negligence, (2) negligent failure to warn, and (3) negligent failure to assist evacuation. The defendants (hereinafter "United States") concede they had a duty to prevent the fire from escaping from Camp Williams, and that they breached that duty when the fire burned three miles beyond Camp Williams' boundaries. Notwithstanding these concessions, the United States argues that (1) it cannot be liable for the injuries Ms. Jacobs-Peterson suffered because the type of harm was not foreseeable and was too far removed from its negligent act of starting the fire; (2) it did not owe plaintiff a duty to warn; and (3) it did not owe a duty to assist the plaintiff to evacuate. The plaintiffs also assert claims for negligent infliction of emotional distress and loss of consortium, but have elected not to pursue those causes of action. (Pl.'s Opp. to Summ. J. 4, 58; Dkt. No. 51.) Accordingly, plaintiffs' Fourth and Fifth Causes of Action are dismissed.

## DISCUSSION

### Defendants' Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court views "all facts and evidence in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012) (internal quotations omitted). The movant must prove that no genuine issue of material fact exists for trial. *See* Fed. R. Civ. P. 56(a); *Nahno-Lopez v. Houser*,

625 F.3d 1279, 1283 (10th Cir. 2010). Accordingly, to survive summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Smart*, 678 F.3d at 858 (quoting *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)).

   1. *Negligence (Proximate Cause)*

Plaintiff alleges that the United States "owed a duty of care to surrounding property owners, including Plaintiff, in conducting firearm training exercises and preventing the ignition and spread of fire," that the duty was breached, and the breach proximately caused her injuries. (Am. Compl. ¶¶ 54-57, Dkt. No. 30.) The United States argues that the type of harm suffered by Ms. Jacobs-Peterson was not foreseeable and therefore its breach was not the proximate cause of her injuries. The court is required to evaluate the United States' liability under the Federal Tort Claims Act ("FTCA"), which states that the United States is to be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In this case that requires the application of Utah law. To establish negligence under Utah law, plaintiff must show: (1) the United States owed a duty; (2) the United States breached that duty; (3) The United States' breach of duty was the proximate cause of the claimed injuries; and (4) plaintiff suffered injury or damages in fact. *Webb v. Univ. of Utah,* 2005 UT 80, ¶ 9, 125 P.3d 906 *overruled in part on other grounds by Cope v. Utah Valley State Coll.,* 2014 UT 53, ¶ 27, 342 P.3d 243.

The United States concedes that it owed a duty and that it breached that duty. It argues, however, that the third element of plaintiff's negligence claim is not met, namely that its breach of duty did not proximately cause Ms. Jacobs-Peterson's injuries. Contrary to the United States' position, proximate causation is generally a question of fact to be determined by the jury.

*Godesky v. Provo City Corp.,* 690 P.2d 541, 544 (Utah 1984). "Only in rare cases may a trial judge rule as a matter of law on the issue of proximate cause." *Steffensen v. Smith's Management Corp.,* 820 P.2d 482, 486 (Utah App. 1991), *aff'd,* 862 P.2d 1342 (Utah 1993). *See also Trujillo v. Utah Dep't of Transp.,* 1999 UT App 227, ¶ 42, 986 P.2d 752, 764 ("[T]he issue of proximate cause is a question of fact for the jury to determine in all but the clearest cases."). For a trial court to rule there is no proximate cause as a matter of law it must determine that: "(1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation," or (2) "reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation." *Bansasine v. Bodell,* 927 P.2d 675 (Utah Ct. App. 1996) (quoting *Steffensen*, 820 P.2d at 487). The requirements for the court to find no proximate cause as a matter of law are not met in this case.

The United States also disputes the legal standard the court should apply to determine whether plaintiff has failed to show proximate cause. Under Utah law, "[p]roximate cause is that cause which, in natural and continuous sequence (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause--the one that necessarily sets in operation the factors that accomplish the injury." *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996) (internal quotations and punctuation omitted) (quoting *Mitchell v. Pearson Enters.*, 697 P.2d 240, 245-46 (Utah 1985)). *See also USA Power, LLC v. PacifiCorp.,* 2016 UT 20, ¶ 114, 372 P. 3d 629, 672 ("[P]roximate causation is . . . an analysis of whether the causation that exists is sufficient to warrant liability."). The United States contends that in order to establish proximate cause plaintiff "must show that 'the specific mechanism of the harm could be foreseen.'"  (Def.'s Mot. Summ. J. 3, Dkt. No. 47, citing *Dee v. Johnson,* 2012 UT App 237, ¶ 5, 286 P.3d 22). In other words, "although a breach of a legal

duty may 'set[ ] into motion a sequence of events that resulted in the plaintiff's injury,' a court can only find that the breach was the proximate cause if the defendant could have reasonably foreseen the 'specific mechanism' of harm resulting in the breach." (Def.'s Mot. Summ. J. 16, Dkt. No. 47, citing *Proctor v. Costco Wholesale Corp.,* 2013 UT App 226 ¶ 12, 311 P.3d 564 (2013)).  The court concludes that the United States misapprehends the application of the proximate cause test.

Under Utah law, "[w]hat is necessary to meet the test of negligence and proximate cause is that it be reasonably foreseeable, not that the particular accident would occur, but only that there is a likelihood of an occurrence of the same general nature.'" *Steffensen*, 862 P.2d at 1346. The defendant need not predict the exact injury that flows from its negligence so long as the general nature of the injury is foreseeable.  *Id.*  The *Steffensen* court upheld a proximate cause jury instruction that stated this principle as follows:

> "Foreseeability in these instructions means injury or harm, if any, to a customer which the defendant and its employees could have reasonably anticipated as the natural consequence of their actions, if any, *even though they were not able to anticipate the particular injury which did occur."*

862 P.2d at 1346 (emphasis added).  As explained in *Steffensen,* Utah law applies what may be characterized as the general nature inquiry. The "specific mechanism" analysis is not in conflict with such an inquiry, but instead should be understood as a more precise tool to describe circumstances wherein the harm that occurs is of a different nature than what would be expected to naturally flow from the negligent act. *See Bansasine*, 927 P.2d at 677.

The phrase "specific mechanism," if taken out of context, may lead to confusion and a misinterpretation of Utah law.  This phrase, as used by Utah courts, does not require a plaintiff to prove that the exact manner in which he or she suffered harm was foreseeable. Rather, the

specific mechanism analysis is used to determine whether the general nature of the harm is the type of harm one would expect from the negligent act.

The proper application of the "specific mechanism" analysis to determine whether a claim is unforeseeable as a matter of law is demonstrated in *Bansanine*. In that case, the defendant was speeding and driving recklessly. 927 P.2d 675. A third party, in a separate vehicle, became angry with the defendant's reckless driving, pulled out a gun, and shot defendant's passenger. The plaintiff, as guardian, brought suit on behalf of the passenger's minor daughter against the defendant driver, arguing that his reckless driving resulted in the death of his passenger. *Id.* It was evident that the defendant's reckless driving was negligent. The only issue was whether his reckless driving was the proximate cause of his passenger's death. The *Bansanine* court held that the "specific harm that occurred was different from what might reasonably be expected, i.e., a car accident." *Id.* at ¶ 5. Put differently, the specific harm foreseeable from the defendant's negligent driving was not death in general, but was death resulting from a car crash. The court concluded that proximate cause was not established merely because death was foreseeable, rather, the specific means that caused the injury must also be foreseeable. In other words, had the passenger's death been the result of an automobile accident caused by defendant's reckless driving, the reckless driving would have been the "means" that caused the injury and proximate cause would be established. Instead, rather than reckless driving being the "means" that caused the death, the "means" of death was the intervening act of the third party shooting defendant's passenger, and that specific mechanism was unforeseeable.

Using the *Bansanine* court's logic, a defendant would not need to foresee the exact nature of a car accident caused by reckless driving for the crash to be foreseeable. Whether the car skidded on ice, ran into a structure, or crashed into another car would be irrelevant. The "specific

mechanism" inquiry allows for a finding of proximate cause when the injury was of the general nature one would expect to occur as a result of the underlying negligent act.

In this case, the United States claims it was not foreseeable that Ms. Jacobs-Peterson would opt to load her horse into her neighbor's trailer, use a quick-release strap system, that her horse would step back after the wind changed and smoke entered the trailer, that her fingers would get stuck in the loop, and that she would grab the horse causing her to twist her back and injure her shoulder and knee. The United States argues that application of the specific mechanism test requires the conclusion, as a matter of law, that it is not foreseeable that the negligent act of starting a fire would cause a person more than a half mile away to suffer an injury from getting her hand caught in a rope. The argument, however, misapplies the specific mechanism test. Were the court to accept such a narrow application, nearly any harm flowing as a natural consequence from a negligent act—other than an immediate and direct injury—could be characterized as unforeseeable and thus be barred.

The correct inquiry is not whether a rope injury is foreseeable from defendants negligently starting a fire, but whether the injuries occurred as the "natural and continuous sequence" of the fire, "unbroken by an efficient intervening cause" and without which fire the injuries would not have occurred. *Harline*, 912 P.2d at 439. In a natural and continuous sequence of events resulting from the fire, Herriman city ordered the mandatory evacuation of plaintiff's neighborhood. The United States does not argue such an evacuation was not foreseeable. A foreseeable natural sequence of evacuation is that people will be required to move large animals threatened by the fire, here a horse, by loading them into trailers. A foreseeable natural sequence of loading a horse into a trailer is that the horse may be spooked by the fire or smoke from the fire, causing injury to the person loading the horse. The injury Ms. Jacobs-

Peterson claims here falls well within the general nature of injuries one could foresee from this sequence of events. Defendants' negligent act of starting the fire set in motion a sequence of events, each of which led to other acts which were foreseeable and consequential, causing the injury. Ms. Jacobs-Peterson alleges that smoke filled the trailer while she was trying to load her horse into the trailer, causing the horse to step back and causing injury to her. On these facts, the court cannot find as a matter of law that the general nature of Ms. Jacobs-Peterson's injuries was not foreseeable, that she has not provided evidence of a causal connection, or that reasonable persons would not be able to differ from defendants on the inferences to be drawn from Ms. Jacobs-Peterson's evidence of proximate causation.

The United States concedes that the evacuation was foreseeable, that it was reasonable and required Ms. Jacobs-Peterson to evacuate and remove her horse, and that it was foreseeable that Ms. Jacobs-Peterson and her property could be damaged due to the spread of the fire. (Stipulation at ¶ 29, 22, 30; Dkt. No. 45.) These concessions are sufficient for plaintiffs' negligence claim to withstand a motion for summary judgment and the evidence is sufficient, if accepted by the trier of fact, to support a finding that the defendants' negligence was the proximate cause of plaintiff's injuries.

   *2. Negligent Failure to Warn*

Plaintiff alleges as the second cause of action that the United States "owed a duty of care . . . to immediately warn residents of a fire that could pose a threat and to warn of the threat posed by the fire to their homes, animals, and property . . . ." Am. Compl. ¶ 62, Dkt. No. 30. Plaintiff argues that Utah courts consider the following factors to determine whether a duty is owed: (1) whether defendants' allegedly tortious conduct consists of an affirmative act or merely an omission; (2) the legal relationship of the parties; (3) the foreseeability or likelihood of injury;

(4) public policy as to which party can best bear the loss occasioned by the injury; and (5) other general policy considerations. *B.R. ex rel. Jeffs v. West*, 2012 UT 11 ¶ 5, 275 P.3d 228. Inherent in this analysis is that when a party that engages in affirmative tortious conduct, the law may impose a duty to mitigate the harm created. *See id.*

The parties have not cited any case law where a court has found a duty to warn of a negligently started fire. Nevertheless, public policy and common sense support such a duty when surrounding property owners and their property are put at risk. Under the facts of this case, however, it is undisputed that Herriman City issued an evacuation order well in advance of the time Ms. Jacobs-Peterson suffered her injury. The essence of Ms. Jacobs-Peterson's claim appears to be not that she did not have notice of the fire, but that the United States delayed in warning about the fire. As a result, she argues, she was forced to evacuate in haste and under stressful conditions that resulted in her injuries. In support of that claim, Ms. Jacobs-Peterson asserts that the fire started at 12:30 p.m. and the evacuation order was not issued until 6:00 p.m. Ms. Jacobs-Peterson fails, however, to support her argument with evidence from which the fact finder could find the time at which the United States gave notice to Herriman City of the need to evacuate. Without this factual support, there is no evidence in the record from which the trier of fact could find delay by the United States or injury caused by that delay. The court grants summary judgment in favor of the United States on the second cause of action and dismisses that cause of action.

3. *Negligent Failure to Assist Evacuation*

Plaintiff alleges as the third cause of action that the United States "owed a duty of care to surrounding property owners, including Plaintiffs, to assist the residents . . . to evacuate from their homes due to the fire negligently caused by Defendant." (Am. Compl. ¶ 70, Dkt. No. 30.)

Again the plaintiff has not cited to any authority that such a duty exists under Utah law. Nevertheless, under appropriate facts, considering the factors set forth above, such a duty may exist. The plaintiff in this case, however, raises no factual circumstances to support imposing a duty in this case. The defendants claim that they were unable to assist in the evacuation of the city's residents because they were actively trying to fight the fire. The plaintiff does not allege that the defendants had personnel who could have assisted in evacuation or even that the defendants were doing anything other than actively trying to stop the spread of the fire.

The plaintiff's claim is entirely speculative. Under the factual circumstances alleged, it cannot be said that the defendants' failure to assist in the evacuation was the actual "but for" cause of her damages or that such failure was even a proximate cause of her damages. The plaintiffs offer no evidence of resources available to the defendants that were not deployed or how such resources, if available, would have altered Ms. Jacobs-Peterson's actions in removing her horse from the path of the fire. The court is unwilling, on the facts of this case, to recognize a duty to assist evacuation or to make broad policy decisions mandating the proper way for an agency to fight a fire or assist in evacuation. Administrative agencies are in a better position than the court to create broad policies for effective ways to handle wildfires and evacuations. The court therefore grants summary judgment and dismisses the plaintiff's claim of negligent failure to assist in evacuation.

## Compensation for Plaintiffs' Property Damage

The United States concedes that because of its breach of duty it should be ordered to pay for the smoke damage caused to plaintiffs' home and requests the court to enter an order that the United States pay plaintiffs the sum of $3,662.70 to compensate for that damage. The court grants the United States' request.

**Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs seek summary judgment on their claim that the defendants owed plaintiffs a duty not to start wildfires and that they breached this duty. The defendants concede that they both owed and breached this duty. The plaintiffs' Motion for Partial Summary Judgment is uncontested. The court therefore grants plaintiffs' Motion for Partial Summary Judgment as to their first count of negligence, finding that defendants owed and breached their duty not to start wildfires.  The issues of proximate cause and the amount of damages remain to be resolved at trial.

**CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment (Dkt. No. 47) is (1) DENIED as to Count One of Negligence; (2) GRANTED as to Count Two of Negligent Failure to Warn;  and (3) GRANTED as to Count Three of Negligent Failure to Assist in Evacuation. Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 48) is GRANTED as to finding a Duty and Breach in their Count One Negligence Claim.

IT IS FURTHER ORDERED that defendants pay to the plaintiffs the sum of $3,662.70 to compensate for property damage suffered by plaintiffs.

DATED this 8th day of November, 2016.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge